**FIRST UNION NATIONAL BANK successor by merger to Fidelity Bank, N.A.,**

v.

**UNITED STATES of America, Mark S. Litton and Robert G. Casagrande.**

No. 98–6445.

United States District Court, E.D. Pennsylvania.

Sept. 4, 2001.

---

Michael J. Cordone, Stevens & Lee, Philadelphia, PA, for Plaintiff.

Christopher R. Zaetta, Beatriz Saiz, U.S. Department of Justice Tax Division, Washington, DC, for Defendant U.S.A.

Percy Squire, Columbus, OH, Henry Lewanndowski, III, Dugan Brinkman Maginnis & Pace, Philadelphia, PA, for Defendant Mark S. Litton.

Mitchell L. Bach, Sheldon Kivell, Fineman & Bach, P.C., Philadelphia, PA, for Defendant Robert G. Casagrande.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Plaintiff, First Union National Bank, has moved to strike Defendant Robert Casagrande's demand for jury trial. For the reasons outlined below, the motion shall be denied.

### Background

This case arises out of a $6.35 million dollar loan which was made in December, 1989 by the Plaintiff's predecessor-in-interest, Fidelity Bank, to the MM Group, Inc. ("MM") for the purchase of six radio stations located in Illinois and Ohio. Mark Litton and Robert Casagrande were the officers and sole shareholders of MM. Given that MM began experiencing financial difficulties shortly thereafter, it agreed with Fidelity to modify the terms and conditions of the loan in writing, which modifications included a Forbearance Agreement, an Amended and Restated Loan Agreement and an Amended, Restated and Consolidated Stock Pledge Agreement, all entered into on June 6, 1991. However, MM continued to suffer from financial problems and, between the fourth quarter of 1991 and the first quarter of 1993, it failed to pay federal withholding taxes for its employees. In 1996, the U.S. Internal Revenue Service assessed First Union as a responsible person under 26 U.S.C. § 6672 for some $140,914.70 in penalties for MM Group's unpaid withholding taxes. In 1997, the IRS levied a second assessment in additional penalties against First Union in the amount of $320,300.81 for MM's unpaid payroll taxes. First Union paid the assessments levied against it on May 30, 1996 and August 27, 1997 but, on May 28, 1998, filed a Form 843 claim with the IRS Center in Philadelphia seeking a refund of all monies which it paid to the Government on account of MM Group's withholding tax liability.

The IRS, however, refused the plaintiff's requests for refund and, on December 11, 1998, it filed this lawsuit against the United States. By way of Amended Complaint filed on June 18, 1999, First Union joined Defendants Litton and Casagrande to this action. Mr. Litton has since settled the claims brought against him by First Union and the United States Government. First Union now moves to strike Mr. Casagrande's jury trial demand on the grounds that (1) Casagrande waived his right to a trial by jury in the Amended and Restated Loan Agreement of June 6, 1991; and (2) Casagrande is not entitled to a jury trial on the U.S. government's cross-claim against him under 26 U.S.C. § 6672 for payment of the unpaid taxes and penalties.[1]

### Discussion

As a general rule, the right to a jury trial is protected by the Seventh Amendment when the claim is a legal one, but not if it is equitable and the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as in other actions. *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963); *Pappas v. Unum Life Insurance Company*, 2000 WL 1137730, **2–3, 2000 U.S. Dist. LEXIS 11308, *6–7 (E.D.Pa.2000), citing *Hatco Corporation v. W.R. Grace & Co.*, 59 F.3d 400, 411 (3d Cir.1995). Thus, the right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law. *In Re City of Philadelphia Litigation*, 158 F.3d 723, 726 (3d Cir.1998). *See Also: Cooper Labs., Inc. v. International Surplus Lines Insurance Co.*, 802 F.2d 667, 671 (3d Cir. 1986). The federal policy favoring jury trials is of historic and continuing strength. *Simler, supra.*

1. While Plaintiff's argument that Robert Casagrande is not entitled to a jury trial on the government's claims against him because he has not paid the unpaid taxes and penalties in dispute may have some merit, we believe that this issue is best raised and addressed by the United States.

■ Although the right to a jury trial is guaranteed by the Seventh Amendment to the U.S. Constitution, like all constitutional rights, it can be waived by the parties. *In Re City of Philadelphia, supra,* citing *United States v. Moore,* 340 U.S. 616, 621, 71 S.Ct. 524, 95 L.Ed. 582 (1951). *See Also:* Fed.R.Civ.P. Nos. 38(a), (d); 39. Waiver can be either express or implied and requires only that the party waiving such right do so voluntarily and knowingly based on the facts of the case. *Seaboard Lumber Company v. United States,* 903 F.2d 1560, 1563 (Fed.Cir.1990), citing, *inter alia, Commodity Futures Trade Commission v. Schor,* 478 U.S. 833, 848, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) and *Brookhart v. Janis,* 384 U.S. 1, 4, 5, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

■ In some circumstances, the right to a jury trial can be waived by inaction or acquiescence. *In Re Philadelphia, supra.; Cooper v. Loper,* 923 F.2d 1045, 1049 (3d Cir.1991). The acceptance of contract provisions providing for dispute resolution in a forum where there is no entitlement to a jury trial may satisfy the "voluntary" and "knowing" standard. *Seaboard, supra.*

■ Given that there is a presumption against waiver, Courts do not uphold jury trial waivers lightly and the burden of proving that a waiver was done both knowingly and intelligently falls upon the party seeking enforcement of a waiver of a jury

trial clause. *Cottman Transmission Systems v. Melody,* 1994 WL 702913, *1, 1994 U.S. Dist. LEXIS 17773, *2 (E.D.Pa.1994); *Hydramar, Inc. v. General Dynamics Corporation,* 1989 WL 159267, *2, 1989 U.S. Dist. LEXIS 15784 *6 (E.D.Pa.1989), citing *Aetna Insurance Co. v. Kennedy,* 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937). A waiver is ʼknowing, voluntary and intelligent when the facts show that (1) there was no gross disparity in bargaining power between the parties; (2) the parties are sophisticated business entities; (3) the parties had an opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous. *Phoenix Four Grantor Trust # 1 v. 642 North Broad Street Associates,* 2000 WL 1717261, *2, 2000 U.S. Dist. LEXIS 16524, *7 (E.D.Pa.2000); *Today's Man, Inc. v. Nations Bank, N.A.,* 2000 WL 822500, *4, 2000 U.S. Dist. LEXIS 8710 *12 (E.D.Pa. 2000); *Corestates Bank, N.A. v. Signet Bank,* 1997 WL 117010, 1997 U.S. Dist. LEXIS 2686 (E.D.Pa.1997). *See Also: National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977); *Hydramar,* 1989 WL 159267, *4, 1989 U.S. Dist. LEXIS 15784 at *11.

In this case, the plaintiff relies upon the following provision in the Amended and Restated Loan Agreement of June 6, 1991 (and the nearly identical provisions in the Shareholder and Forbearance Agreements executed that same day [2]) in support of its

2. Specifically, Section 13.6 of the Amended, Restated and Consolidated Stock Pledge Agreement states:

13.6 *WAIVER OF JURY TRIAL*
THE PLEDGORS HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN. THE PLEDGORS HEREBY CERTIFY THAT NO REP-
RESENTATIVE OR AGENT OF THE BANK (INCLUDING ITS COUNSEL) HAS REPRESENTED EXPRESSLY RO OTHERWISE, THAT THE BANK WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL. THE PLEDGORS ACKNOWLEDGE THAT THE BANK HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS BY, *INTER ALIA* THE PROVISIONS OF THIS SECTION 13.6.

contention that Casagrande has no entitlement to a jury trial with respect to First Union's claims against him:

> 10.15  *WAIVER OF JURY TRIAL*
>
> THE BORROWERS HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE NOTES, THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREIN OR THEREIN. BORROWERS HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF THE BANK (INCLUDING ITS COUNSEL) HAS REPRESENTED, EXPRESSLY OR OTHERWISE THAT THE BANK WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL. THE BORROWERS ACKNOWLEDGED THAT THE BANK HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, *INTER ALIA,* THE PROVISIONS OF THIS SECTION 10.15.

Casagrande, in turn, contends that he was not a party to those agreements in that he signed them only in his capacity as a corporate officer and that even if he did execute them in his individual capacity, the plaintiff has not met its burden of proving that the jury trial waivers were knowingly and voluntarily executed.

In reviewing the documents upon which the plaintiff relies, we observe that Messrs. Litton and Casagrande appear to have executed the Amended, Restated and Consolidated Stock Pledge Agreement in their individual capacities as no corporate designations appear with their signatures. This is in contrast to the manner in which they executed the Forbearance Agreement and the Amended and Restated Loan Agreement, in that in executing both of those documents, Mr. Casagrande and Mr. Litton clearly wrote in that they were signing as President and Vice President respectively of MM Group, Inc. As paragraph 63 of the Plaintiff's Amended Complaint avers, "[p]ursuant to Section 1.3.1 of the Stock Pledge Agreement executed by Casagrande and Litton, the occurrence of an 'Event of Default' under the Forbearance Agreement, the Amended Loan Agreement and/or any other Loan Documents would constitute an 'Event of Default' under the Stock Pledge Agreement," we conclude that this lawsuit is "in respect of any litigation arising out of, under, or in connection with [the Amended, Restated and Consolidated Stock Pledge Agreement], the other forbearance agreements

---

Under Section 12 of the Forbearance Agreements,

12. WAIVER OF JURY TRIAL

EACH OF THE BORROWERS AND THE SHAREHOLDERS HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT OR HE MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE OTHER FORBEARANCE AGREEMENTS OR THE LOAN DOCUMENTS,OR THE TRANSACTIONS CONTEMPLATED HEREIN OR THEREIN. EACH OF THE BORROWERS AND SHAREHOLDERS HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE BANK (INCLUDING ITS COUNSEL) HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL. EACH OF THE BORROWERS AND SHAREHOLDERS ACKNOWLEDGES THAT THE BANK HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, *INTER ALIA,* THE PROVISIONS OF THIS SECTION 12.

or the loan documents or the transactions contemplated herein or therein." Accordingly, we must now determine whether the jury trial waiver executed by Mr. Casagrande was in fact, executed knowingly and intelligently as required by federal law.

 In application of the foregoing four factors and in reviewing the jury trial waiver itself, we note that it was written in its entirety in all capital letters under the underlined heading "Waiver of Jury Trial." We therefore find that the waiver provision at issue was conspicuous.

The existing record in this matter also reflects that Mr. Casagrande is a pilot reporter for a television station who served as the corporate president of at least two corporations. Despite the fact that Mr. Casagrande's deposition testimony often appeared to be vague and evasive, and thus suggestive of some level of sophistication in the business world, he nevertheless testified that he executed the signature pages to the Amended, Restated and Consolidated Stock Pledge, Forbearance and Amended and Restated Loan Agreements alone, without seeing or reading the actual documents themselves. These actions are indeed contrary to what would normally be expected from a sophisticated businessman and thus we cannot find Mr. Casagrande to have the level of sophistication necessary to satisfy the test for a knowing and intelligent waiver.

What's more, in further reviewing the record in this matter, we cannot find any evidence that there was not a gross disparity in bargaining power between Messrs. Casagrande, Litton and MM Group, Inc. and Fidelity Bank. Indeed, given MM Group's financial straits at the time the documents were executed, it is highly likely that there was a severe disparity in bargaining power between these parties and it is highly unlikely that the MM Group parties, including Mr. Casagrande, had any opportunity to negotiate the terms and conditions of the loan restructuring agreements. In the absence of such evidence, we cannot grant First Union's motion to strike Mr. Casagrande's jury trial request as to the claims which it raises in its complaint against him.

An order follows.

## *ORDER*

AND NOW, _____ this day _____ of 2001, upon consideration of the Plaintiff's Motion to Strike the Jury Trial Demand of Defendant Robert Casagrande, it is hereby ORDERED that the Motion is DENIED for the reasons outlined in the foregoing Memorandum Opinion.