IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FOCUS POINT PROPERTIES, LLC; JEFF KANTOR, *Plaintiffs/Appellees*,

*v.*

CLEO JOHNSON; OAK ACRES TRUST, *Defendants/Appellants*.

No. 1 CA-CV 12-0766
FILED 06-19-2014

Appeal from the Superior Court in Maricopa County
No. CV2010-015770
The Honorable Dean M. Fink, Judge

**AFFIRMED IN PART, REVERSED IN PART**

COUNSEL

Dickinson Wright/Mariscal Weeks, PLLC, Phoenix
By Timothy J. Thomason
*Counsel for Plaintiffs/Appellee*

Ridenour Hienton & Lewis, PLLC, Phoenix
By Patricia A. Premeau
*Counsel for Defendants/Appellants*

**OPINION**

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Margaret H. Downie and Judge Michael J. Brown joined.

**C A T T A N I**, Judge:

**¶1**        This case involves litigation commenced under Arizona Revised Statutes ("A.R.S.") § 32-3152(A),[1] which authorizes a "qualified" licensed real estate salesperson to file a lawsuit to collect an unpaid real estate commission for services rendered.  We are asked to address whether "qualified" in this context means something other than being licensed at the time services are provided, or alternatively, whether a court assessing whether someone is qualified under the statute should consider conduct unrelated to the services rendered but that calls into question whether the salesperson's license should have been suspended or revoked.  For reasons that follow, we affirm the trial court's ruling that under § 32-3152(A), the only relevant inquiry is whether the person seeking to collect a commission was licensed at the time services were provided.

**¶2**        We are also asked to address whether an individual who signs a real estate contract on behalf of a trust, without specifying her representative capacity, may be held personally liable for breaching a provision in the contract that requires payment of a real estate commission.  We reverse the trial court's ruling on this issue and find that, under the circumstances presented here, a trustee who contracts on behalf of a trust cannot be held personally liable for breaching the contract.

**FACTS AND PROCEDURAL BACKGROUND**[2]

**¶3**        In May 2009, Cleo Johnson, who was the trustee of the Oak Acres Trust, hired Jeff Kantor of Focus Point Properties, LLC to sell

---

[1]        Absent material revisions after the relevant date, we cite a statute's current version.

[2]        We view the evidence in the light most favorable to upholding the jury's verdict. *Warrington v. Tempe Elementary Sch. Dist. No. 3*, 197 Ariz. 68, 69, ¶ 4, 3 P.3d 988, 989 (App. 1999).

commercial real estate in Apache Junction owned by the Trust. In June 2009, Johnson signed a letter authorizing Kantor to speak about the property directly with the City of Apache Junction for planning purposes, and Kantor thereafter worked to assist Johnson with rehabilitating and selling the property.

**¶4** Kantor prepared and signed a six-month listing agreement, dated October 15, 2009, to sell the property. Kantor reviewed the terms of the agreement with Johnson and gave it to her to sign.[3]

**¶5** After discussing the agreement with Johnson, Kantor discovered it would take months to rehabilitate the property because of its blighted condition, including substantial issues with vagrancy, criminal activity, and debris. In several conversations with Johnson, Kantor explained that, given the increased time required to adequately rehabilitate the property, he would need a one-year listing agreement. During those discussions, Johnson requested that Kantor expand the scope of the listing agreement to include leasing the commercial units on the property to generate money to pay property taxes. After multiple conversations with Johnson, Kantor prepared a revised one-year listing agreement to sell or lease the property. Johnson signed the new agreement on October 29, 2009.

**¶6** Johnson did not read the new agreement before signing it. Although Kantor offered to explain the details of the agreement, Johnson indicated that, based on their previous discussions, she understood the new terms. Kantor gave Johnson a copy of the October 29 agreement at their next meeting, approximately one week after Johnson signed it.

**¶7** Over the last three months of 2009, Kantor spent at least 25 to 30 hours each week coordinating the rehabilitation of the property. During the listing period, Kantor procured a tenant, and in January 2010, he arranged for the tenant to meet with him and Johnson to discuss lease terms. Johnson failed to attend the meeting, but she nevertheless subsequently signed a lease with the tenant without letting Kantor know she was doing so.

**¶8** On February 1, 2010, Focus Point sent Johnson/Oak Acres an invoice for a lease commission of $2,720. Johnson canceled the listing

---

[3] Although Johnson promised to sign and return the agreement, she did not deliver a signed copy until after this litigation began.

agreement three days later. Focus Point then sent Johnson/Oak Acres a letter demanding $140,000, based on a liquidated damages provision in the agreement.[4]

**¶9**        When Johnson/Oak Acres refused to pay, Focus Point/Kantor filed a complaint in Maricopa County Superior Court alleging breach of contract, fraud, promissory estoppel, and unjust enrichment. Johnson/Oak Acres counterclaimed for fraudulent misrepresentation and inducement into contract, negligent misrepresentation, breach of fiduciary duty, and damages under Arizona's vulnerable adult statute, A.R.S. § 46-456.

**¶10**        Both sides filed motions for summary judgment. After briefing and oral argument, the trial court denied Focus Point/Kantor's motion for summary judgment and granted Johnson/Oak Acres' motion for summary judgment on Focus Point/Kantor's claims for promissory estoppel and unjust enrichment. The ruling left for trial Focus Point/Kantor's claims for breach of contract and fraud, along with Johnson/Oak Acres' counterclaims for fraudulent misrepresentation and inducement into contract, negligent misrepresentation, breach of fiduciary duty, and violations of the vulnerable adult statute.

**¶11**        Two days before trial was scheduled to begin, Johnson/Oak Acres filed an emergency motion to dismiss the complaint and vacate the trial based on information regarding Kantor's real estate license history. Johnson/Oak Acres' motion stated that in September 2006, Kantor had entered into a consent order with the Arizona Department of Real Estate ("ADRE") for failing to timely disclose two DUI convictions. Pursuant to the consent order, ADRE placed Kantor under a two-year provisional license from September 2006 until September 2008 and required that he abstain from alcohol and illegal drugs, and that he submit to random testing. In May 2008, Kantor was convicted of another DUI offense, but he did not report the conviction to ADRE until September 28, 2011. In March

---

[4]        Paragraph 6(b) of the October 29 listing agreement provided that "[t]he same amount of sale or rental commission shall be due and payable to Broker if, without the consent of Broker, the Premises is withdrawn from this Listing, otherwise withdrawn from sale or rental or rented, transferred, or conveyed by Owner." Paragraph 6(g) provided that "[i]f completion of a sale or rental is prevented by default of Owner, or with the consent of Owner, the entire sale or rental commission, as appropriate, shall be paid to Broker by Owner."

2012, while ADRE's investigation into that report remained pending, Kantor voluntarily surrendered his real estate license.

¶12        Johnson/Oak Acres' motion to dismiss asserted that if Kantor had properly disclosed his DUI conviction, he would not have held a real estate license when he provided services to Johnson/Oak Acres, and, therefore, he was not entitled to a commission.  The trial court denied the motion, reasoning that because Kantor was licensed at the time he provided the services at issue, the fact that he had committed an act that might have, or even should have, resulted in the loss of his license was not relevant.

¶13        The case proceeded to trial, and the jury found in favor of Focus Point/Kantor on their breach of contract and punitive damages claims, but against them on their fraud claim.  The jury ruled against Johnson/Oak Acres on all of their counterclaims.

¶14        In June 2012, Johnson/Oak Acres filed a motion for judgment as a matter of law and a motion for new trial.  Among other arguments, Johnson/Oak Acres asserted that Kantor should not have been permitted to maintain his lawsuit for a real estate commission because of his failure to disclose his violation of the ADRE consent order; the jury's verdict awarding punitive damages arising from a breach of contract claim was not permitted by law; and the jury's verdict awarding damages against Johnson in her individual capacity was not factually or legally supported.  The trial court vacated the award of punitive damages but affirmed the remaining verdicts.  The court entered judgment against Johnson/Oak Acres for compensatory damages in the aggregate sum of $140,000 plus interest, and awarded Focus Point/Kantor their attorney's fees in the amount of $39,000 plus interest, and costs in the amount of $2,511.26 plus interest.[5]

¶15        Johnson/Oak Acres timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

---

[5]        The compensatory damages amount was based upon the loss of a four percent commission on the list price of $3.5 million.  Johnson/Oak Acres have not challenged on appeal the amount of the award.

**DISCUSSION**

**¶16** Johnson/Oak Acres raises three arguments on appeal, asserting that (1) Kantor did not have standing under § 32-2152(A) to maintain a lawsuit for a real estate commission, (2) the trial court improperly denied Johnson/Oak Acres' motion for summary judgment on their breach of fiduciary duty claim, and (3) Johnson should not have been found to be personally liable for the real estate commission. We address each argument in turn.

## I. Kantor's Right to Sue for a Real Estate Commission.

**¶17** Johnson/Oak Acres contend the trial court erred under A.R.S. § 32-2152(A) by ruling that Kantor could initiate and maintain a lawsuit for a real estate commission notwithstanding evidence that he violated Arizona law by not timely disclosing to ADRE that he had violated a prior consent order. Johnson/Oak Acres' argument fails, however, because Kantor held an active Arizona real estate license at the time he earned the commission, and questions regarding whether Kantor's license should have been revoked were collateral to the dispute in this case.

**¶18** We review de novo issues of statutory interpretation. *Keenen v. Biles*, 199 Ariz. 266, 267, ¶ 4, 17 P.3d 111, 112 (App. 2001). Here, we address the interplay between § 32-2152(A), which imposes qualifications for filing an action to collect a disputed real estate commission, and A.R.S. § 32-2153(B), which details the Arizona Real Estate Commissioner's duties regarding disciplining real estate licensees. Section 32-2152(A) provides:

> An action for the collection of compensation earned may be maintained in the courts of the state by any broker or salesperson. To commence the action the complaint shall allege that the plaintiff was a *qualified* licensed broker or salesperson at the time the claim arose. Prior to hearing the action the court shall require the plaintiff to prove the alleged qualifications.

(Emphasis added.) Section 32-2153(B) provides in relevant part:

> The commissioner may suspend or revoke a license, deny the issuance of a license, issue a letter of concern to a licensee, issue a provisional license or deny the renewal or the right of renewal of a license issued under this chapter when it appears that the holder or applicant has:

6

. . . .

2. Been convicted in a court of competent jurisdiction in this or any other state of a felony or of any crime of forgery, theft, extortion, conspiracy to defraud, a crime of moral turpitude or any other like offense.

**¶19** Johnson/Oak Acres argue that although Kantor's license had not been revoked at the time he performed services on Oak Acres' behalf, he was not a "qualified" licensed salesperson under § 32-2152(A) because of his acknowledged violation of the consent order relating to his prior DUI violations. Johnson/Oak Acres assert that the trial court's ruling that Kantor had standing to initiate litigation renders insignificant the term "qualified" in § 32-2152(A). They argue that under that statute, the trial court should have determined not only whether Kantor was licensed, but also whether he was a "qualified" licensee.

**¶20** Viewing the statutory scheme as a whole, we conclude that the Legislature intended that a determination regarding whether a salesperson is qualified to obtain or maintain a license is to be made by the Real Estate Commissioner under § 32-2153(B). Although § 32-2152(A) requires a determination of whether the salesperson was a "qualified" licensed salesperson at the time the claim for compensation arose, the more specific provision (§ 32-2153) detailing when and by whom a license should be suspended or revoked is controlling as to that issue. *See Lange v. Lotzer*, 151 Ariz. 260, 261, 727 P.2d 38, 39 (App. 1986) ("The law is well settled that a specific statute governs over a general statute on the same subject and will control.").

**¶21** Moreover, to allow a court to assess (under § 32-2152(A)) whether a salesperson's license should have been suspended or revoked could potentially result in the court and the Real Estate Commissioner addressing identical facts and making conflicting factual findings. Additionally, under § 32-2153(B), the Commissioner is not required to suspend or revoke a real estate license based on specified facts; instead the Commissioner "may" suspend or revoke a license, or alternatively may determine to issue a letter of concern or impose other types of discipline upon finding that a real estate salesperson engaged in misconduct. Thus, permitting a court to determine whether a license should have been or should be revoked could similarly result in different factfinders reaching conflicting conclusions, even assuming agreement that the actions constituted misconduct.

**¶22** Furthermore, permitting the type of inquiry Johnson/Oak Acres seek would result in potentially extensive collateral litigation of matters unrelated to the specific transaction at issue. Here, Johnson/Oak Acres do not assert that Kantor's DUI conviction had any bearing on any of his dealings with Oak Acres or Johnson. Nor do they dispute that Kantor held an active real estate license when he performed work on behalf of the Trust. Thus, the trial court correctly excluded evidence of the DUI conviction as irrelevant, and properly left to the Real Estate Commissioner (in a different proceeding) the task of determining whether to revoke Kantor's license or otherwise sanction him.[6]

**¶23** Johnson/Oak Acres cite several cases in which courts declined to award commissions to real estate agents. But those cases involved real estate commissions sought by individuals who were not licensed at the time services were rendered. *See, e.g.*, *Mousa v. Saba*, 222 Ariz. 581, 586, ¶ 20, 218 P.3d 1038, 1043 (App. 2009) (stating that an unlicensed individual could not maintain an action for compensation for services that required a real estate license); *Realty Execs., Inc. v. Northrup, King & Co.*, 24 Ariz. App. 400, 402–03, 539 P.2d 514, 516–17 (1975) (finding that a brokerage firm was barred from recovering a commission because the salesperson arranged for and signed a listing agreement on behalf of a brokerage firm during a period of time in which the salesperson was unlicensed). Because Kantor was undisputedly licensed at the time he provided the services at issue, those cases are not dispositive.

**¶24** In sum, we agree with the trial court that a determination whether to suspend or revoke a real estate license is to be left to the Real Estate Commissioner, and that the court's responsibility under § 32-2152(A) is to determine whether the salesperson had a current license at the time services were performed.

## II. Breach of Fiduciary Duty.

**¶25** Johnson/Oak Acres argue that the trial court erred by denying their cross-motion for summary judgment regarding Kantor's alleged breach of fiduciary duty and by imposing an additional element of

---

[6] Kantor surrendered his license in 2012, and the Commissioner apparently chose not to further pursue the matter, even though under § 32-2153(E) the Commissioner could have proceeded with disciplinary proceedings notwithstanding Kantor's surrender of his license.

intent into their breach of fiduciary duty claim. But the denial of summary judgment is generally not reviewable on appeal from a final judgment entered after trial. *John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, 539, ¶ 19, 96 P.3d 530, 537 (App. 2004). Thus, Johnson/Oak Acres is not entitled to relief on this aspect of their claim.

¶26 Moreover, Kantor presented more than adequate evidence from which the jury could reject Johnson/Oak Acres' allegations that Kantor failed to explain the changed terms in the second agreement before Johnson signed it, and that Kantor improperly placed his own financial interests above those of Johnson/Oak Acres. Kantor testified that he (1) discussed the terms of the October 15 listing agreement with Johnson, (2) had multiple conversations with Johnson about the revised terms in the October 29 listing agreement and the reasons for the revisions, (3) asked Johnson if she wanted to discuss the terms of the October 29 agreement when he presented it to her for signature, and (4) provided Johnson a copy of the October 29 agreement, albeit a week later. Notwithstanding contrary testimony from Johnson, there was sufficient evidentiary support for the jury's verdict in favor of Focus Point/Kantor on Johnson/Oak Acres' breach of fiduciary duty claim.

¶27 Johnson/Oak Acres further argue that during oral argument on the motions for summary judgment approximately five months before trial, the court improperly commented that a person claiming a breach of fiduciary duty must prove intent. The court did not, however, instruct the jury on "intent" as an additional element of breach of fiduciary duty. The jury instructions relating to breach of fiduciary duty correctly stated that a real estate agent is required "to protect and promote the interests of the client, and to deal fairly with all parties to the transaction," and further provided that an agent "who breaches the fiduciary duty owed to the client is not entitled to a commission." Accordingly, because the jury instructions properly set forth the law regarding fiduciary duty, anything the court said during the summary judgment argument is irrelevant.

## III. Jury Verdict Holding Johnson Personally Liable.

¶28 Johnson contends that the jury improperly found her personally liable, along with Oak Acres, for the real estate commission owed to Focus Point/Kantor. Johnson argues that the evidence presented at trial established that Kantor knew Oak Acres owned the property, and that the listing agreement was between the property owner and the broker. Thus, it was clear that Kantor was dealing with Johnson in her

capacity as trustee.  We agree that the contract at issue was between Oak Acres and the real estate broker, and that the evidence was thus insufficient to establish a basis for finding Johnson personally liable for breach of contract.

¶29        Paragraph 30 of the October 29 listing agreement expressly provided that the parties to the agreement were the "Owner and Broker," and Focus Point/Kantor have never asserted that anyone other than Oak Acres owned the subject property.  In the signature block of the agreement, "Oak Acres Trust-Cleo Johnson" was typed above the printed words "Print Name of Owner."  Johnson signed the document immediately below that designation and above the printed designation "Owner's Signature."  Thus, although Johnson's handwritten signature did not delineate the capacity in which she was signing, the signature block made clear that the document was to be signed by the property *owner*.  Moreover, in an addendum that listed the assessor's parcel numbers for the subject property and that was attached to the agreement, the signature block designated the signee as "Oak Acres Trust *by* Cleo Johnson" (emphasis added), and Johnson again signed only her name, clearly doing so in her representative capacity.

¶30        While settling jury instructions, Johnson's counsel argued that the jury should not be instructed that Johnson could be held personally liable for breach of contract because "there's only one way that she could have been signing [the agreement].  And that would be as trustee of the Oak Acres Trust."  The trial court determined that "at this point I think this is probably a jury question and not a question for the Court to decide through jury instructions."  The court thus allowed the jury to determine whether Johnson was acting in her individual or representative capacity (or both) when signing the listing agreement.  The jury subsequently returned a verdict in favor of Focus Point/Kantor on their breach of contract claim, finding both Johnson individually and Oak Acres liable for breaching the contract.

¶31        After the verdict, Johnson filed a motion for judgment as a matter of law and a motion for new trial, asserting, among other arguments, that the verdict against her personally was not factually or legally supported.  The court rejected that argument, finding that "[t]he meaning of the signature line 'Oak Acres Trust – Cleo Johnson' is also a matter for the jury as factfinder.  [The jury] found that Ms. Johnson's signature was intended to bind both the trust and her personally.  Here too the Court must defer."

¶**32**        Focus Point/Kantor argue that the typed line "Oak Acres Trust-Cleo Johnson" created an ambiguity regarding whether Johnson was signing in her individual or representative capacity (or both), and that we should thus uphold the jury's finding that Johnson is personally liable for breach of contract.  We recognize that if a contract is ambiguous, determining what the parties intended is a question of fact for the jury. *See Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 62, ¶ 52, 985 P.2d 535, 547 (App. 1998).  But here, there was no ambiguity regarding the parties to the contract, and Johnson's signature appeared over a line that called for the owner's signature.

¶**33**        Because the contract clearly specified that it was an agreement between the property owner and the broker, and because the signature block on the contract, coupled with the signature block on the addendum, made clear that Johnson signed on behalf of the owner, we conclude that the jury verdict holding Johnson personally liable for breach of contract must be set aside.

¶**34**        Moreover, holding Johnson personally liable would be inconsistent with finding liability against Oak Acres on the breach of contract claim because Johnson's signature on the contract was the basis for establishing Oak Acres' status as a party to the contract.  In *Valley National Bank, Sunnymead v. Cook*, 136 Ariz. 232, 235–36, 665 P.2d 576, 579–80 (App. 1983), this court rejected a claim that a person who signed a corporate check without specifying the capacity in which the check was being signed could be held personally liable, along with the corporation, for the amount of the check:

> Having secured a judgment on that basis against the corporate defendant, we are at a loss to see how he may now contend that appellant's signature was on his individual behalf and not in a representative capacity.  *It must be one or the other.  It cannot be both.*

(Emphasis added, citation omitted.)  Here, Johnson only provided one signature on the document, and Focus Point/Kantor's breach of contract judgment against Oak Acres is based on that signature.  Thus, Focus Point/Kantor are precluded from obtaining judgments for breach of contract against both Oak Acres and Johnson individually based on the same signature.

¶**35**        Focus Point/Kantor cite four cases from other jurisdictions for the proposition that Johnson can be held personally liable for the

payment of their commission. Even were we to accept the reasoning of those cases, they are factually distinguishable. Two of the out-of-state cases found personal liability based on a separate personal guaranty. *See Schroeder v. Hunter Douglas, Inc.*, 324 S.E.2d 746, 747–48 (Ga. Ct. App. 1984); *Hope Petty Motors, Inc. v. Hyatt*, 425 S.E.2d 786, 791 (S.C. Ct. App. 1992). Here, Johnson did not personally guarantee Oak Acres' obligations, and the document at issue did not reference any obligations of a guarantor. The third case did not reach the issue of whether a jury could properly conclude that a single signature bound the signer in both representative and individual capacities, finding instead that the litigant had waived its objection by failing to object before the trial court. *See Griffin v. Associated Payphone*, 534 S.E.2d 540, 543–44 (Ga. Ct. App. 2000). The fourth case reasoned that because corporate representatives had signed some documents that clearly specified the individuals' representative capacity, their signatures on other documents without such a designation suggested they had signed those documents in their individual capacity. *See First Union Nat'l Bank v. United States*, 164 F. Supp. 2d 660, 664 (E.D. Pa. 2001). Here, Johnson consistently signed documents without designating a representative capacity, even when unequivocally acting as trustee of Oak Acres. *See supra* ¶ 29. Thus, the documents she signed do not reflect a conscious choice to sign in an individual, rather than representative, capacity.

¶36 Because the contracting party in this case was clearly the property owner (Oak Acres), and because Johnson's sole signature was binding as to Oak Acres, we reverse the judgment against Johnson in her individual capacity.

## IV. Attorney's Fees and Costs.

¶37 The parties have requested their attorney's fees and costs on appeal pursuant to the terms of the listing agreements and A.R.S. § 12-341.01(A).

¶38 When a contract contains an attorney's fees provision, we will grant fees consistent with that provision. *A. Miner Contracting, Inc. v. Toho-Tolani County Improvement Dist.*, 233 Ariz. 249, 261, ¶ 40, 311 P.3d 1062, 1074 (App. 2013). Here, Paragraph 18 of the October 29 listing agreement provides for payment of attorney's fees and costs:

> In any action or proceeding to enforce any provision of this Listing, or for damages sustained by reason of its breach, the prevailing party shall be entitled to receive from the other

party reasonable attorney's fees, as set by the court or arbitrator and not by a jury, and all other related expenses, such as expert witness fees, fees paid to investigators and court costs.

¶39　　Focus Point/Kantor have prevailed against Oak Acres on their breach of contract claim. Accordingly, pursuant to the terms of the contract, we grant Focus Point/Kantor their reasonable fees on appeal incurred as to Oak Acres upon their compliance with ARCAP 21. As the overall prevailing parties on appeal, Focus Point/Kantor are entitled to their costs upon compliance with ARCAP 21.

¶40　　Although Johnson has prevailed on her claim that she is not personally liable, our holding also dictates that the agreement—including its attorney's fees language—is not applicable to her personally. Accordingly, we look to A.R.S. § 12-341.01(A), rather than the contract provision, in determining whether to award attorney's fees. Exercising our discretion under that statute, we decline to award Johnson fees.

**CONCLUSION**

¶41　　For the foregoing reasons, we affirm the trial court's judgment against Oak Acres, but reverse the judgment against Johnson.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

13