NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

KAREN BAIRSTOW, *Plaintiff/Appellant,*

*v.*

WINDGATE RANCH COMMUNITY ASSOCIATION, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 23-0645

FILED 09-19-2024

---

Appeal from the Superior Court in Maricopa County
No.  CV2020-006657
The Honorable Bradley Astrowsky, Judge

**VACATED AND REMANDED**

---

COUNSEL

Sacks Tierney, P.A., Scottsdale
By Brian E. Ditsch, Michael L. Kitchen, James C. Golden, Mea M. Donnelly
*Counsel for Plaintiff/Appellant*

Tiffany & Bosco, P.A., Phoenix
By Amy D. Sells, William M. Fischbach, David M. Barlow
*Counsel for Defendants/Appellees Regina and Justin Ausloos*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**B R O W N**, Judge:

¶1          Plaintiff Karen Bairstow appeals from the superior court's grant of summary judgment in favor of her former neighbors, defendants Regina and Justin Ausloos, on Bairstow's several claims arising from improvements constructed on the Auslooses' property.  Bairstow also challenges the court's order awarding attorneys' fees and costs to the Auslooses.  For the following reasons, we vacate the court's ruling and remand for further proceedings.

## BACKGROUND

¶2          All lots in the Windgate Ranch Community ("Community") are subject to covenants, conditions, and restrictions ("CC&Rs"), and as pertinent here, design guidelines ("Guidelines"), which are collectively known as the Project Documents.  The Community is governed by the Windgate Ranch Community Association ("Windgate"), an Arizona nonprofit corporation.  As provided by the CC&Rs, Windgate (as well as any lot owner) has the right to enforce the Project Documents.

¶3          The CC&Rs require lot owners who desire to make any improvements or modifications to their lots to receive written approval from the Design Review Committee ("Committee") before starting such construction.  Pursuant to the CC&Rs, the Committee adopted the Guidelines to evaluate modification requests.  Under Section 11.2 of the CC&Rs, to receive approval from the Committee a lot owner must submit "a written request for approval specifying in detail the nature and extent of the [m]odification," including plans or specifications describing "the nature, kind, color, shape, height, materials and location of the Improvements and such other information" as may be required by the Guidelines.  Yet, if the Committee fails to "approve or disapprove a complete application" within 45 days, Section 11.2 also states that "approval will not be required," and the lot owner is deemed to have complied with Section 11.2's requirement for Committee approval.

¶4            In 2015, Bairstow bought a home in the Community.  The Auslooses' home is located directly north of Bairstow's, and the two lots share a common fence.   In July 2018, the Auslooses submitted a modification application to the Committee for approval to install an inground pool, barbeque, and ramada in their backyard, including plans of the proposed improvements.  The application included a form from the Guidelines listing additional matters "which must be adhered to when installing a swimming pool, spa, hot tub, or water feature."  The form directs the applicant to check boxes next to the listed design requirements to "indicate compliance."  The Auslooses checked these boxes and signed the form.  Despite representing such compliance, Windgate's architect initially disapproved of the plans because the planned waterslide was too close to the property line and the plans included plant material that was not permitted in the Guidelines.  The application also lacked several height measurements.  Nonetheless, the architect's recommended denial of the plans was not communicated to the Auslooses within Section 11.2's 45-day review period.

¶5            The Auslooses began constructing their pool and related improvements in November of that year.  Bairstow became concerned because the construction was blocking the view from her kitchen window. Windgate told the Auslooses to stop construction because the plans were never approved, and the Auslooses complied.  After investigation of the plans and history of the Auslooses' application, the Committee determined there were numerous Guideline violations with the application, including some terms that the Auslooses had checked to indicate compliance with initially.  However, the Committee later determined it could not take any action on the proposed project because the application was not denied within the 45-day window under the CC&Rs, and apparently on that basis the Auslooses were notified of the project's approval in January 2019.

¶6            Bairstow claimed the improvements to the Auslooses' property caused her significant distress.  For example, she explained that the Auslooses' children were on the newly constructed waterslide in the backyard almost every night, "screaming and shouting at the top of their lungs" from early to late evening, which she claims made it impossible to sleep in her home.  Bairstow also asserted that the waterslide created a vantage point from which anyone standing on it could see into her backyard and home, making her feel unable to comfortably swim or sunbathe.  Bairstow further claimed that the ramada wall obstructed a window in her kitchen.  The loss of this window replaced her "blue sky" view with that of a concrete wall and prevented natural light from entering her home.  As a result, her great room was now "dark and dingy."  These

conditions, according to Bairstow, were so intolerable that she was forced to sell her home prematurely in June 2019. Bairstow acknowledged, however, that she never disclosed any concerns about noise, privacy, or lighting/view when she sold the home.

¶7 In June 2020, Bairstow sued the Auslooses and Windgate for breaching the CC&Rs. She amended her complaint twice, adding claims of nuisance and breach of the implied covenant of good faith and fair dealing against the Auslooses, and additional claims against Windgate. The Auslooses moved to dismiss the nuisance claim, asserting it was based on inconsequential annoyances that fell short of the substantial harm required to support a private nuisance claim. The superior court denied the motion, noting that while "the nuisance claim as pled is light" it was "not without sufficient facts which, if true, could support the claim."

¶8 Following discovery, the Auslooses moved for summary judgment on each of Bairstow's claims, which the superior court granted. As to the breach of contract claim, the court found (1) the Auslooses complied with the CC&Rs' requirements to submit a modification proposal, and (2) Bairstow did not provide any authority for how "Windgate's failure to communicate a timely denial . . . is attributable to the Auslooses." Finding that the Auslooses complied with the CC&Rs and did not start construction until the 45-day period for Windgate's approval had lapsed, the court determined summary judgment was proper in the Auslooses' favor on the breach of contract claim. The court also concluded that because the Auslooses "did not breach any contract, summary judgment is proper on [Bairstow's] claim for breach of the covenant of good faith and fair dealing." As to Bairstow's claim of nuisance, the court determined that Bairstow's allegations were unsupported by the evidence, specifically noting that Bairstow's failure to disclose the issues allegedly causing a nuisance was a tacit admission that the modifications did not cause her substantial harm.

¶9 After awarding attorneys' fees and costs to the Auslooses, the court issued a judgment under Arizona Rule of Civil Procedure 54(b).[1] Bairstow timely appealed. We have jurisdiction under A.R.S. § 12-2101(A).

---

[1] Bairstow's claims against Windgate were scheduled for trial, but have since been stayed pending the outcome of this appeal.

**DISCUSSION**

¶10 Bairstow argues the superior court erred in granting summary judgment on her claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and private nuisance. We review the superior court's ruling summary judgment de novo, viewing the facts in a light most favorable to the non-moving party, construing all reasonable inferences in favor of that party. *Tilley v. Delci*, 220 Ariz. 233, 236, ¶ 7 (App. 2009). A party seeking summary judgment must demonstrate there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a).

**A.** **Breach of Contract**

¶11 Bairstow contends there are genuine issues of material fact on whether the Auslooses breached the CC&Rs. To establish breach of a contract, the plaintiff must show the existence of a contract, breach of that contract, and resulting damages. *Graham v. Asbury*, 112 Ariz. 184, 185 (1975). "CC&Rs form a contract between individual landowners and all the landowners bound by the restrictions, as a whole." *Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532, 538, ¶ 14 (2022). We therefore review de novo the interpretation of CC&Rs. *Powell v. Washburn*, 211 Ariz. 553, 555–56, ¶ 8 (2006). In interpreting CC&Rs, we are mindful that "each part of a contract must be read together, 'to bring harmony, if possible, between all parts of the writing.'" *Elm Ret. Ctr. LP v. Callaway*, 226 Ariz. 287, 291 ¶ 18 (App. 2010) (quotation omitted).

¶12 Bairstow argues the Auslooses breached the CC&Rs in two ways. First, the clause under which the Auslooses' project was "deemed" to be approved also required the Auslooses to acquire written approval before constructing their modifications. Section 11.2 of the CC&Rs prohibits a homeowner from making any modification "without the prior written approval of the [] Committee." But that section also states:

> In the event that the [] Committee fails to approve or disapprove a complete application for approval within forty-five (45) days after the application, together with any fee payable pursuant to **Section 11.7** and all supporting information, plans and specifications requested by the [] Committee, have been submitted to the [] Committee, approval will not be required and this Section will be deemed to have been complied with by the Owner who requested approval of such plans.

According to Bairstow, the "deemed to have been complied with" clause does not exempt a homeowner from also receiving separate written approval before beginning construction on improvements, or that at the least the provision is ambiguous as to whether written approval is required, which is a jury question. *Focus Point Props., LLC v. Johnson*, 235 Ariz. 170, 177, ¶ 32 (App. 2014). That interpretation, however, overlooks the language that "approval will not be required" for applications that have not been approved or disapproved in 45 days. Thus, the "prior written approval" clause cannot be reasonably interpreted as requiring separate, written approval once an application has been deemed approved. *See In re Estate of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005) ("A contract is not ambiguous just because the parties . . . disagree about its meaning.").

¶13        Our analysis does not stop there, however, because the "deemed to have been complied with" clause only applies to *complete* applications. Nothing in the CC&Rs defines a "complete" application, but an ordinary meaning of that term means "having all necessary parts, elements, or steps." *Complete*, Meriam-Webster.com Dictionary, https://www.merriam-webster.com/dicitionary/complete; *see also Centerpoint Mech. Lien Claims, LLC v. Commonwealth Land Title Ins. Co.*, 255 Ariz. 261, 270, ¶ 45 (App. 2023) ("As when construing statutes, in the absence of express definitions within a contract, we may consider dictionary definitions to assist in determining the ordinary meaning of words.").

¶14        Also, Section 11.2 of the CC&Rs provides that modification applications must include "the nature, kind, color, shape, height, materials and location of the [i]mprovements and such other information as may be required by the [] Guidelines." But nothing in the record shows that the plans attached to the Auslooses' application contained all the required elements. Instead, the evidence provided in the summary judgment filings show that the issue remains disputed. For example, Bairstow presented testimony from Windgate's architect, who noted that the plans lacked measurements required for the modifications the Auslooses requested. We recognize that Section 11.4 of the CC&Rs allows the Committee to "authorize variances from compliance with any provision of the [] Guidelines," but only if that variance is "in writing and signed by an authorized representative of the [] Committee." Genuine disputes of material fact exist as to whether the Auslooses' application was "complete" as required by the "deemed to have been complied with" clause, as well as

whether the Auslooses requested a variance from the Guidelines requiring written approval before they could begin construction.[2]

**¶15** Bairstow also argues the Auslooses breached the CC&Rs by submitting a modification application that did not comply with the Guidelines, and later representing that the application did meet those requirements. The Auslooses counter that the CC&Rs contain no express provision requiring applications to comply with the Guidelines, and so falsely representing compliance cannot constitute a breach. That position conflicts with Section 9.1 of the CC&Rs, which states that either an owner's or Windgate's failure "to take enforcement action with respect to a violation of the Project Documents shall not constitute or be deemed a waiver of the right of the Association or any Owner to enforce the Project Documents in the future." Granted, neither Windgate nor Bairstow has sought "enforcement" of the Project Documents in this litigation in the sense of compelling compliance, but that does not mean a lot owner can falsely represent compliance with the Guidelines without consequence.

**¶16** The Guidelines specifically require any lot owner requesting improvements, involving pools or water features, to indicate compliance with numerous terms. Among these terms include requirements that pool slides not exceed eight feet in height and that any slide be set back at least 15 feet from any fence. The plans included in the record before us are not clear whether the submitted application met those terms or other necessary criteria. Moreover, deposition testimony from the architect that reviewed the plans and the communications from the Committee after their investigation of the Auslooses' application shows there were violations of some terms for which the Auslooses had indicated compliance. Genuine

---

[2]     The Auslooses argue we should not consider Bairstow's arguments addressing the requirement of a "complete" application because this issue was not, in their view, sufficiently developed in the opening brief and thus waived. They also argue Bairstow's claims related to Section 11.4 (variances) are waived because they were raised for the first time on appeal. The issue of completeness sufficiently alerted the Auslooses what was being argued, especially when Bairstow repeatedly asserted in the superior court that the Auslooses' submittal did not comply with the Guidelines. Concerning Section 11.4, to determine the appropriate meaning and application of a contract, we review related provisions together, not in isolation. *See Elm Ret. Ctr. LP*, 226 Ariz. at 291 ¶ 18. Even so, "the doctrine of waiver is discretionary." *Noriega v. Town of Miami*, 243 Ariz. 320, 326, ¶ 27 (App. 2017). In our discretion, we decline to apply waiver as to either of these arguments.

disputes of material fact exist on whether the Auslooses complied with the Guidelines.

### B.     Covenant of Good Faith and Fair Dealing

**¶17**     Bairstow asserts that because the Auslooses falsely certified that their application complied with the Guidelines, the superior court erred in granting summary judgment on her claim of breach of the implied covenant of good faith and fair dealing.

**¶18**     The covenant of good faith and fair dealing is a term implied in all contracts, and "prohibits a party from doing anything to prevent other parties . . . from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters, & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 490, ¶ 59 (2002). A party breaches this covenant by "exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 435, ¶ 14 (App. 2002). A party can breach this covenant even if it has technically complied with the express terms of a contract. *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 137–38, ¶ 15 (App. 2006).

**¶19**     In determining whether a party's expectations are reasonable, "the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 385 (1985). According to the Auslooses, regardless of whether they falsely represented compliance with the Guidelines, the CC&Rs foreclosed any expectation that all modification applications would be compliant. The Auslooses base this assertion on the fact that the express terms of the CC&Rs grant the Committee discretion to approve or disapprove applications within 45 days, and if no action is taken, then the applications will be automatically approved. Thus, the Auslooses contend that Bairstow should have expected that some noncompliant applications would nonetheless be approved.

**¶20**     Certainly, the CC&Rs do not guarantee all home improvements will comply with the Guidelines, as the Committee can affirm applications that vary from the Guidelines. But these variances are reserved for specific circumstances. Section 11.4 of the CC&Rs states:

> The [] Committee may authorize variances from compliance with any provision of the Design Guidelines in circumstances

> where the design meets the intent of the provision sought to be varied and where granting of the variance would enhance design innovation and excellence, or when circumstances such as topography, natural obstructions, hardship, or aesthetic or environmental considerations so require, and the Design Review Committee determines, in its sole discretion, that the objective of the particular requirement can still be achieved.

Moreover, the Guidelines themselves state that they are binding on all homeowners seeking modifications. Nothing in the CC&Rs or Guidelines indicate that the possibility of the Committee failing to timely act on applications somehow relieves homeowners of their obligations to comply with those requirements. *See supra*, ¶ 15. Based on these terms, Bairstow has at the least raised a genuine dispute as to whether she had a reasonable expectation that other lot owners will not falsely represent to the Committee that their applications to construct improvements comply with the Guidelines. The court erred in granting summary judgment on Bairstow's claim for breach of the implied covenant of good faith and fair dealing. *See County of La Paz v. Yakima Compost Co. Inc.*, 224 Ariz. 590, 604, ¶ 38 (App. 2010) ("Whether a party breached the covenant is a question of fact for the jury.").

### C.    Nuisance

**¶21**          Bairstow argues the court erroneously granted summary judgment on her private nuisance claim, asserting her deposition testimony was sufficient to create triable issues of fact as to whether the Auslooses' conduct constituted a nuisance. A private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Armory Park Neighborhood Ass'n v. Episcopal Comm. Serv. in Ariz.*, 148 Ariz. 1, 4 (1985). For another's actions to rise to the level of nuisance, the interference with another's use and enjoyment of land must be "substantial, intentional and unreasonable under the circumstances." *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 489, ¶ 32 (App. 2007).

**¶22**          Our supreme court has recognized that on a motion for summary judgment, a superior court "must evaluate the evidence to some extent." *Orme School v. Reeves*, 166 Ariz. 301, 309 (1990). Summary judgment is appropriate if the proponent of the claim has produced facts that "have so little probative value . . . that reasonable people could not agree with the conclusion advanced." *Id.* We cannot say that Bairstow's testimony through her deposition and declaration are, as a matter of law, insufficient

to establish a claim of nuisance. Bairstow testified that the noise arising from the Auslooses' backyard after construction of the waterslide occurred through the evening, several times per week, consistently interrupting her ability to sleep. Excessive noise can constitute a nuisance depending on the "character, volume, [and] duration" of the noise. *City of Phoenix v. Harlan*, 75 Ariz. 290, 296 (1953).[3] As the superior court noted in its prior denial of the Auslooses' motion to dismiss, the claim as presented may be light, but it is not so deficient that a reasonable person would be unable to believe Bairstow's testimony and conclude that the noise constituted a substantial and unreasonable invasion on Bairstow's use and enjoyment of her home.

¶23 The Auslooses contend that Bairstow's testimony is not sufficient evidence because Bairstow did not list the issues with noise or other conditions in her property disclosure statement when she sold her home, a fact which the superior court interpreted as a tacit admission that the conditions were not as intolerable as Bairstow claimed. Bairstow's omission does not demand that inference. Such information may be probative for purposes of impeachment or undermining Bairstow's credibility, but summary judgment is not the proper venue to resolve those concerns. *See Orme School*, 166 Ariz. at 309 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." (quotation omitted)).

¶24 The Auslooses also suggest that Bairstow's testimony about her experience is not sufficient to overcome summary judgment because nuisance is an objective inquiry. *See* Restatement (Second) of Torts § 826 cmt. c (1979). But even under that standard, her firsthand knowledge of what occurred on the Auslooses property is highly relevant as to whether the conditions she observed or presented an unreasonable impairment of the use and enjoyment of her property. And if a jury finds Bairstow's testimony credible, there is no reason her testimony would be insufficient as a matter of law to establish her nuisance claim. *Cf. State v. Montano*, 121

---

[3] Bairstow acknowledges that no Arizona case has specifically addressed nuisance claims based on acts constituting an invasion of privacy, but points to decisions from other jurisdictions supporting such a theory. The Auslooses likewise note that no Arizona case has determined that the loss of sunlight or a scenic view constitute a nuisance, and direct us to several jurisdictions that indicate it is not. Because Bairstow presented sufficient evidence of noise to overcome summary judgment, we need not address whether the additional conduct she complained of also constitutes a nuisance.

Ariz. 147, 149 (App. 1978) (noting that "one witness, if relevant and credible, is sufficient" evidence to support a conviction).

## CONCLUSION

**¶25**        We vacate the superior court's grant of summary judgment on Bairstow's three claims and also vacate the court's award of attorneys' fees and costs to the Auslooses.  The superior court may award fees after the case has been resolved on the merits.  *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 204, ¶ 37 (App. 2007).  We deny Bairstow's claim for attorneys' fees on appeal, deferring the request to the superior court's discretion.  *See id.*  As the successful party on appeal, Bairstow is awarded taxable costs incurred on appeal subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV